IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EQUISTAR CHEMICALS, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CAUSE NO. 4:07-cv-03378 |
| | § | |
| RELIANT ENERGY POWER | § | |
| GENERATION, INC. AND | § | |
| RELIANT ENERGY INC. | § | |
| | | |
| Defendants. | | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR REMAND OR MANDATORY ABSTENTION

Defendants Reliant Energy Power Generation, Inc. ("Reliant Power") and Reliant Energy, Inc. ("Reliant Energy") file this response to plaintiff Equistar Chemicals, LP's ("Equistar") Motion for Remand or Mandatory Abstention ("Motion to Remand").

### I.
### INTRODUCTION AND FACTUAL BACKGROUND

Equistar's lawsuit is a strange animal indeed. It names as one defendant Reliant Energy, an entity with which Equistar has no contractual relationship. It makes claims against the other defendant, Reliant Power, based in part on a contract that is no longer in effect (the Second Amended and Restated Development Agreement, which by its terms has long since expired[1]). Moreover, the lawsuit seeks declaratory and injunctive relief against these defendants based on

---

[1] Paragraph 1.4 of the Agreement says that its term ends on the "Commercial Operation Date" – that is, the date on which the cogeneration facility began commercial operation. That occurred in June 2002. *See* Affidavit of David F. Sladic submitted in support of this response and Defendants' Motion to Transfer ("Sladic Aff.".), ¶ 3.

an alleged transaction (the sale by Reliant Power of its ownership interest in two limited liability companies) that may never occur.[2]

Paragraphs 21 and 22 at the end of the Original Petition reveal why Equistar's lawsuit is so oddly structured. There Equistar acknowledges that Reliant Energy Channelview LP ("Reliant Channelview"), a company it has not sued, has filed for Chapter 11 bankruptcy in the District of Delaware, as have the two Reliant entities that hold the general and limited partnership interests in Reliant Channelview. That bankruptcy is still in its early stages.[3]

Reliant Channelview's principal asset is a cogeneration facility it owns and operates in Channelview, Texas (the "cogeneration plant"). Unlike the entities Equistar has sued, Reliant Channelview does have a significant existing contractual relationship with Equistar. Reliant Channelview and Equistar have entered into no fewer than eight agreements under which Reliant Channelview, among other things, sells steam to Equistar for use in Equistar's adjacent chemical plant and buys water from Equistar for use in the cogeneration facility. Most of these agreements are still in effect.[4] Reliant Channelview has not yet assumed or rejected any of the Equistar agreements in the Reliant Channelview bankruptcy.[5]

Equistar's lawsuit is a thinly-disguised effort to end run the Reliant Channelview bankruptcy.[6] For example, one of Equistar's claims seeks to establish an obligation on the part of Reliant Power, the parent of Reliant Channelview's general and limited partners (which are, as noted above, also in bankruptcy), to dictate the Chapter 11 debtors' positions in the Reliant

---

[2]  See Sladic Aff., ¶ 7. For these reasons defendants have alleged that the claims made in the lawsuit are not ripe.
[3]  Id., ¶¶ 5, 6.
[4]  Id., ¶ 4.
[5]  Id., ¶ 6.
[6]  Equistar also appears to have brought the lawsuit for the purposes of conducting discovery in the bankruptcy proceeding. As part of the Reliant Channelview bankruptcy, Reliant Channelview is seeking to sell the cogeneration plant. It has kept its creditors, including Equistar, generally informed about the progress of the sale effort. Apparently dissatisfied with the amount of information provided, Equistar has recently requested discovery in this lawsuit that seeks many details about the potential sale. See Sladic Aff., ¶ 8 and Ex. 2.

Channelview bankruptcy. That intention is made clear in paragraph 15 of the Petition, in which Equistar claims that Reliant Power has an obligation "to prevent the *Project Partnership* (an entity Reliant Power controls) from attempting to destroy or impair Equistar's right to *the royalty payment.*" The *Project Partnership* to which Equistar refers is Reliant Channelview, one of the Chapter 11 debtors; the *royalty payment,* an obligation of Reliant Channelview under the Second Amended and Restated Cash Flow Agreement ("the Cash Flow Agreement") to which only Equistar and Reliant Channelview are parties.

Equistar's lawsuit thus belongs in the Bankruptcy Court in which the Reliant Channelview bankruptcy is pending. One of Equistar's claims depends on the alleged threat that Reliant Channelview will seek to reject the Cash Flow Agreement, thus "impairing" Equistar's right to a royalty payment under that agreement. Reliant Channelview may or may not seek to reject the Cash Flow Agreement. But Equistar cannot legitimately ask this Court to tell the parent of bankrupt entities what positions the debtors must take in the bankruptcy. Nor can this Court decide, as Equistar alleges as a necessary predicate to its claims, that rejecting the Cash Flow Agreement in the bankruptcy "is not in the best interests of" Reliant Channelview.[7] Those are matters that are committed under federal law to the debtor in a Chapter 11 case and to the bankruptcy courts, and for this Court to undertake them, as Equistar requests, would impermissibly intrude on the Bankruptcy Court's jurisdiction. Equistar seeks in essence to have this Court protect and enforce its rights as a creditor in the Reliant Channelview bankruptcy.

It was for these reasons that defendants removed this case to this Court. Defendants have now moved to transfer the case to the District of Delaware so that it may be referred to the bankruptcy court there. As demonstrated in the Motion to Transfer, Equistar's Motion to Remand ought to be decided by the district in which the bankruptcy is pending, and this Court

---

[7] Original Petition, ¶ 15 (emphasis in original).

should transfer the case to the District of Delaware for that purpose. But should the Court

nevertheless reach the merits of the Motion to Remand, it should deny the motion because, as

shown below, this case arises under the Bankruptcy Code and the Reliant Channelview

bankruptcy and thus constitutes a "core" proceeding not subject to mandatory absention.

## II.
## THE GOVERNING LAW

Federal jurisdiction in bankruptcy cases and proceedings is based on 28 U.S.C. § 1334,

"which is to be read as a broad grant of jurisdiction." *In re Majestic Energy Corp.*, 835 F.2d 87,

90 (5th Cir. 1988). The statute "lists four types of matters over which the district court has

jurisdiction:

1.      'cases under title 11',

2.      'proceedings arising under title 11',

3.      proceedings 'arising in' a case under title 11, and

4.      proceedings 'related to' a case under title 11."

*In re Wood*, 825 F.2d 90, 92 (5th Cir. 1987). Relevant to this case are the "related to" and the

"arising under" bases for jurisdiction.

"Related to" jurisdiction exists if the case "could have any conceivable effect on the"

bankruptcy estate. *In re Stonebridge Techs., Inc.*, 430 F.3d 260, 266 (5th Cir. 2005); *Wood*, 825

F.3d at 93. "More specifically, an action is related to bankruptcy if 'the outcome could alter the

debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon

the handling and administration of the bankrupt estate.'" *Stonebridge*, 430 F.3d at 266 (quoting

*Majestic Energy*, 835 F.2d at 90). When a lawsuit concerns a contract that is the property of a

bankruptcy estate, the suit relates to the bankruptcy because a party to the contract must go to the

bankruptcy estate for satisfaction of the agreement or any damages resulting from its breach. *Id.*

If the outcome of the action could bind the debtor's future course of action, it relates to the bankruptcy, and federal jurisdiction is appropriate. *Majestic Energy*, 835 F.2d at 90.

"Arising under" or "arising in" jurisdiction equates to the Bankruptcy Code's grant of judicial power to bankruptcy courts over "core proceedings" pursuant to 28 U.S.C. § 157(b)(1). *In re U.S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir. 2002). A proceeding is core "if it invokes a substantive right provided by title 11 or it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Wood*, 825 F.2d at 97. In other words, an action arises under the Bankruptcy Code if it is "created or determined by a statutory provision of title 11." *Id.,* at 96.

The origin of a particular cause of action is not determinative of whether it is a core proceeding as "[m]any truly bankruptcy issues, like the determination of creditor claims, turn on state law." *In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999). For instance, creditor claims looking to enforce contractual rights, typically based on state law, fall squarely within the "core proceedings" category. *Stonebridge*, 430 F.3d at 267. Moreover, as *Stonebridge* held, claims between third parties may also be included within the bankruptcy court's core jurisdiction if the claims *"are substantively related to the interpretation of"* and thus *"dependent upon"* rights created in bankruptcy. *Id.* In that case, the trustee, asserting the litigation rights of a non-debtor bank,[8] alleged that a creditor-lessor made negligent misrepresentations to wrongfully draw on the debtor-lessee's letter of credit at the bank after the lessee defaulted on a lease it ultimately rejected. *Id.,* at 263-65. The debtor had secured the letter of credit with a certificate of deposit that was property of the bankruptcy estate. *Id.* Although the creditor resisted jurisdiction by characterizing the case narrowly as one between two non-debtors, the Fifth Circuit looked to

---

[8] For jurisdictional purposes, the court did not place any weight to the fact that the trustee was the party seeking to vindicate the bank's rights. *Id.*, at 266. Therefore, the case was effectively one between two non-debtors. *Id.*

Case 1:08-cv-00023-GMS-MPT    Document 5    Filed 12/03/2007    Page 6 of 9

the larger impact of the lawsuit. The court of appeals concluded that the pursuit of the bank's

legal rights against the creditor arose under the debtor's bankruptcy and constituted a "core

proceeding" because disposition of the case depended on the interpretation of rights created in

bankruptcy, including the right to reject a lease under section 365(a) of the Bankruptcy Code.

*Id.*, at 266-67.

### III.
### THIS CASE SHOULD NOT BE REMANDED

Although Equistar half-heartedly argues otherwise, there can be little doubt that "related

to" bankruptcy jurisdiction exists over this case. All that is required for "related to" jurisdiction

is that the case's outcome "could have any conceivable impact" on the bankruptcy. A lawsuit

relating to a creditor's rights under an agreement to which only the creditor and the Chapter 11

debtor are parties could impact the bankruptcy in any number of ways. Here, to name but one

example, a determination that it would not be in the best interest of Reliant Channelview, the

Chapter 11 debtor, to impair the royalty obligation it owes under the Cash Flow Agreement

between it and Equistar, as Equistar asks this Court to find, could obviously impact the

bankruptcy in which that royalty obligation is at issue.

The real dispute on this motion concerns the existence of "arising under" jurisdiction.

Equistar has done its best to plead its case in a way designed to avoid such jurisdiction, and it has

expressly disclaimed that it seeks any bankruptcy-related relief. But no manner of clever

pleading nor repeated disclaimers can disguise the essential nature of Equistar's claims.

Equistar has asserted essentially two claims: (1) that it has a consent right in respect of

any sale by Reliant Power of its interests in the general and limited partners of Reliant

Channelview;[9] and (2) that Reliant Power has the obligation to prevent Reliant Channelview

---

[9] Because no such sale may ever occur, this claim is not ripe. *See* Sladic Aff., ¶ 7.

from impairing Equistar's right to a "royalty payment" under the Cash Flow Agreement between

Equistar and Reliant Channelview. It is the second claim that "arises under" the Bankruptcy

Code and the Reliant Channelview bankruptcy. The guts of that claim are contained in

paragraph 15 of Equistar's Petition:

> The Project Partnership is Equistar's counter-party under the specific agreement
> that gives rise to the royalty payment. However, in the Letter Agreement, Reliant
> Power specifically undertook to prevent the Project Partnership (an entity Reliant
> Power controls) from attempting to destroy or impair Equistar's rights to the
> royalty payment. (See ¶ 2.) Reliant Power also undertook in the Letter Agreement
> to cause the General Partner and the Limited Partner to act at all times in the best
> interests of the Project Partnership – and impairing the royalty payment is not in
> the Project Partnerships; best interest. (See ¶ 7.)

This paragraph acknowledges a key element of Equistar's claim: that the claim depends

on an interpretation of the "Letter Agreement" as imposing on Reliant Power two obligations:

(1) the obligation to prevent Reliant Channelview from impairing Equistar's rights under the

Cash Flow Agreement, and (2) the obligation to cause the general and limited partners of Reliant

Channelview not to impair those rights since, according to Equistar, "impairing the royalty

payment is not in the best interest of" Reliant Channelview. What Equistar does not explicitly

acknowledge, however, is the obvious fact that the only parties that can "impair" Equistar's

rights under the Cash Flow Agreement are parties in bankruptcy – Reliant Channelview, the

party that owes obligations to Equistar under that Agreement, and its general and limited

partners. Moreover, the only threat of "impairment" to Equistar's rights arises from the Reliant

Channelview bankruptcy and the possibility that Reliant Channelview may seek to reject the

Cash Flow Agreement in the future.

Thus, Equistar's claim, even though nominally asserted against entities not in bankruptcy,

is "substantively related to" and "dependent upon" bankruptcy rights in much the same way as

the third-party claims in *Stonebridge* were related to and dependent upon lease rejection rights

created in bankruptcy. Here, Equistar's claims seek to vindicate rights that are at issue in the Reliant Channelview bankruptcy – its alleged right to a royalty payment under a contract with the debtor. Equistar's claims relate substantively and directly to rights created in bankruptcy – the right of Reliant Channelview to seek to reject the Cash Flow Agreement and thereby "impair" Equistar's right to royalty payments, and conversely the right of Equistar to pursue its bankruptcy rights with respect to the Cash Flow Agreement. The claims would not exist absent the threat to Equistar's royalty payment rights by the bankruptcy; they depend on the bankruptcy right of rejection of executory contracts; they in effect seek to force a Chapter 11 debtor to assume a contract when it has no bankruptcy obligation to do so; and they rely on the making of findings – e.g., that not impairing the royalty payment is in the best interest of Reliant Channelview – that would inject this Court into substantive issues that are committed under the Bankruptcy Code to the Chapter 11 debtor and the bankruptcy courts.

## IV.
## CONCLUSION

By this lawsuit Equistar seeks to enforce and protect its contractual rights as a creditor in the Reliant Channelview bankruptcy against a Chapter 11 debtor. Creditor claims are universally viewed as "core proceedings" subject to the "arising under" or "arising in" jurisdiction under the bankruptcy laws. Equistar cannot avoid the process mandated by federal law for enforcing its rights against a bankrupt entity, Reliant Channelview, by bringing an action against Reliant Power and Reliant Energy, its parents, to in essence pre-adjudicate claims arising out of an agreement to which only Equistar and Reliant Channelview are parties.

For these reasons, defendants Reliant Power and Reliant Channelview request that the

Court deny plaintiff Equistar's Motion to Remand.


Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP


By: _____

Michael M. Wilson
State Bar No. 21704800
Attorney-in-Charge
J. Josh Clayton
State Bar No. 24050426
1111 Louisiana Street, 44th Floor
Houston, Texas 77002
Telephone: (713) 220-5800
Facsimile: (713) 236-0822

**ATTORNEYS FOR DEFENDANTS
RELIANT ENERGY POWER
GENERATION, INC. AND
RELIANT ENERGY, INC.**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served in

accordance with the Federal Rules of Civil Procedure on the following counsel of record on the

3rd day of December 2007.

Thomas M. Farrell
NICKENS KEETON LAWLESS FARRELL & FLACK, LLP
600 Travis, Suite #7500
Houston, Texas 77002


_____

Michael M. Wilson